**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL MEFFORD            :
                          : CIVIL ACTION
          Plaintiff       :
                          :
     vs.                  :
                          : NO.  14-CV-1006
PRUDENTIAL INSURANCE COMPANY :
OF AMERICA and TYCO        :
INTERNATIONAL MANAGEMENT    :
COMPANY, LLC              :
                          :
          Defendants      :


**MEMORANDUM AND ORDER**


**JOYNER, J.**                          **March 25, 2015**


        This civil action, seeking relief under the Employee
Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et.
seq.*, is before this Court now on Motions of both defendants for
Summary Judgment as well as the Plaintiff's Cross-Motion for
Summary Judgment.  For the reasons which follow, the Plaintiff's
Cross-Motion for Summary Judgment shall be granted and the
motions of both Defendants denied.

### History of the Case

        Plaintiff Michael Mefford commenced this lawsuit in
February, 2014 to recover a $100,000 benefit under a Dependent
Life Insurance Policy which he elected for his wife, Kimberly
Mefford, through his employer, Defendant Tyco International
Management Company ("TYCO") during Tyco's annual benefits open

enrollment period in October, 2012.  This dependent insurance, along with the life insurance on his own life which Plaintiff elected at the same time, was to become effective on January 1, 2013 and was part of the group plan offered by Defendant Tyco and made available to its employees through Defendant Prudential Insurance Company.  (First Amended Complaint ["FAC"], ¶s 20, 21).

On November 19, 2012 as the result of a stomach disorder, Plaintiff went out on short-term disability from his regular employment with Tyco and he remained out on short-term disability through January 7, 2013, the date of Kimberly Mefford's apparently sudden death.  (FAC, ¶ 23).  Despite having deducted Plaintiff's portion of the premium payment for his spouse's life insurance from his paycheck for January 1, 2013, Defendants nevertheless denied Plaintiff's claim for the $100,000 benefit on the grounds that recovery was barred due to his failure to satisfy the "Active At Work Requirement" contained within the policy.  (FAC, ¶s 23, 24, 25).

By this action, Plaintiff asserts that the Active Work Requirement is ambiguous in that it is nowhere defined to include an absence from work specifically based upon a disability and is nowhere utilized in policy provisions dealing with coverages for a spouse or domestic partner. (FAC, ¶ 31).  Hence Plaintiff claims, the denial of the benefit sought in this case is violative of ERISA.

**Summary Judgment Standards**

In determining a motion for summary judgment, we are guided by the standards outlined in Fed. R. Civ. P. 56.  Under subsection(a) of that rule,

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law...

In reviewing the record before it for purposes of assessing the propriety of entering summary judgment, the court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Ma v. Westinghouse Electric Co., No. 13-2433, 2014 U.S. App. LEXIS 5049, *9 (March 18, 2014); Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013).  The initial burden is on the party seeking summary judgment to point to the evidence "which it believes demonstrate the absence of a genuine issue of material fact."  United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d

3

Cir. 2006)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

However, to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.  <u>Jakimas v. Hoffman-LaRoche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007).  And, "if there is a chance that a reasonable juror would not accept a moving party's necessary propositions of fact," summary judgment is inappropriate."  <u>Burton</u>, <u>supra</u>, (quoting <u>El v. SEPTA</u>, 479 F. 3d 232, 238 (3d Cir. 2007)).

The rule is no different where there are cross-motions for summary judgment.  "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."  <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008)(quoting <u>Rains v. Cascade Industries, Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).  The mere fact that "both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury."  <u>Facenda v. N.F.L. Films, Inc.</u>, 542 F.3d 1007, 1023 (3d Cir. 2008)(quoting 10A Charles Alan Wright, Arthur R. Miller &

4

Mary Kay Kane, *Federal Practice and Procedure §2720* (3d ed. 1998), at 330-331).


## **Discussion**

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 113, 109 S. Ct. 942, 956, 103 L. Ed. 2d 80 (1988)(quoting <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 148, 105 S. Ct. 3085, 3093, 87 L. Ed. 2d 96 (1985) and <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 90, 103 S. Ct. 2890, 2896, 77 L. Ed. 2d 490 (1983)).  To this end, "ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit plans." <u>Firestone</u>, 489 U.S. at 109, 109 S. Ct. at 948 (quoting <u>Massachusetts Mutual</u>, 473 U.S. at 146, 105 S. Ct. at 3092).  "ERISA applies to 'any employee benefit plan if it is established or maintained by any employer engaged in commerce;" it defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing certain benefits for its participants or their beneficiaries through the purchase of insurance or otherwise."

Menkes v. Prudential Insurance Co. Of America, 762 F.3d 285, 290 (3d Cir. 2014)(quoting 29 U.S.C. §§1002(1), 1003(a)).

"ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'" Aetna Health, Inc. v. Davila, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495, 159 L. Ed.2d 312 (2004)(quoting Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 147, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985)).  That integrated enforcement mechanism, codified in Section 502 of the statute, 29 U.S.C. §1132(a) is what Plaintiff has invoked in this case as the basis for his action, specifically, subsections (a)(1)(b)[1], which provides:

**§1132.  Civil enforcement**

**(a) Persons empowered to bring a civil action.**  A civil action may be brought -

(1) by a participant or beneficiary -

(A) for the relief provided for in subsection © of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

To assert a claim under the foregoing provision, a plan

---

[1]   Although the First Amended Complaint is somewhat confusing insofar as ¶ 4 avers that "[t]his matter arises under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C., chapter 18 §101 et seq., and particularly 502(a)(3); 502(a)(1)(b), 29 U.S.C. §1132(a)(1)(B)," given the other allegations in the complaint and the averment in ¶ 19 that "[t]he plaintiff's action is brought pursuant to 502(a)(1)(B) of ERISA 29 USC 1132(a)(1)(B)," we construe this matter to arise only under Section 502(a)(1)(B) and shall therefore disregard any references to Section 502(a)(3) which empower an aggrieved participant or beneficiary to pursue equitable relief.

participant must demonstrate that "he or she has a right to benefits that is legally enforceable against the plan," and that the plan administrator improperly denied those benefits. Fleisher v. Standard Insurance Co., 679 F.3d 116, 120 (3d Cir. 2012)(quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006)).  The Courts of Appeals have generally limited the record for judicial review to the administrative record compiled during internal review.  Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 614, 187 L. Ed. 2d. 529, 540 (2013).

Despite its "comprehensive and reticulated" nature, however, the ERISA statute itself does not set out the appropriate standard of review for actions under §1132(a)(1) challenging benefit eligibility determinations.  Firestone, 489 U.S. at 108-109, 109 S. Ct. at 953.  Applying trust law principles to fill this statutory gap and recognizing that the proper standard of review of a trustee's decision typically depends on the language of the instrument creating the trust, the Supreme Court has decreed that a denial of benefits challenged under this section is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  Conkright v. Frommert, 559 U.S. 506, 512, 130 S. Ct. 1640, 1646, 176 L. Ed. 2d 469, 475 (2010); Firestone, 489 U.S. at 115, 109 S. Ct. at 956-957.  "If the trust documents give the

7

trustee 'power to construe disputed or doubtful terms, the
trustee's interpretation will not be disturbed if reasonable.'"
Conkright, id, (quoting Firestone, 489 U.S. at 111-112).
In other words, when the benefit plan gives the administrator
discretionary authority, that determination is entitled to
deference and is reviewed only for abuse of that discretion.[2]
Howley v. Mellon Financial Corp., 625 F.3d 788, 792 (3d Cir.
2010); Doroshow v. Hartford Life & Accident Insurance Co., 574
F.3d 230, 233 (3d Cir. 2009).

However, "[o]ften the entity that administers the plan, such
as an employer or an insurance company, both determines whether
an employee is eligible for benefits and pays benefits out of its
own pocket."  Metropolitan Life Insurance Co. v. Glenn, 554 U.S.
105, 128 S. Ct. 2343, 2346, 171 L. Ed. 2d 299 (2008).  The
Supreme Court has found that such a dual role creates a conflict
of interest and has held that, where presented, a reviewing court
must consider that conflict as a factor in ascertaining whether a
plan administrator has abused its discretion in denying benefits

---

[2] In the ERISA context, the arbitrary and capricious and abuse of
discretion standards of review are essentially identical and are accordingly
used interchangeably when referring to the deferential standard of review.
Fleisher, 679 F.3d at 121, n.2 (citing Miller v. American Airlines, Inc., 632
F.3d 837, 845 n. 2 (3d Cir. 2011)).  "An administrator's decision is
arbitrary and capricious 'if it is without reason, unsupported by substantial
evidence or erroneous as a matter of law.'" Miller, 632 F.3d at 845(quoting
Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).
Furthermore, "[u]nder ERISA, an entity is considered a fiduciary to the extent
that, inter alia, it holds any discretionary authority or discretionary
responsibility in the administration of an employee benefit plan."  Wachtel v.
Health Net, Inc., 482 F.3d 225, 229 (3d Cir. 2007)(citing 29 U.S.C.
§1002(21)(A)(iii)).

with the significance of the factor depending upon the particular
circumstances of the case.  Id.; Firestone, 489 U.S. at 115, 109
S. Ct. at 957.[3]

Here, the gravamen of the plaintiff's complaint is the
plan's purported ambiguities with respect to the Active Work
Requirement.  In now moving for summary judgment, Plaintiff
contends that because the Active Work Requirement provision
clearly does not apply to Dependent Term Life Insurance Coverage,
Defendants' interpretation of the Plan is clearly erroneous.  By
their motions, Defendants submit that their interpretation of the

---

[3]  The Supreme Court, first in Firestone and again in Glenn, has
articulated the following four principles of review to be employed by the
courts in their overview of benefit determinations by fiduciaries and/or plan
administrators:

(1)  In "determining the appropriate standard of review, a court should
be guided by principles of trust law;" in doing so it should analogize a
plan administrator to the trustee of a common-law trust and it should
consider a benefit determination to be a fiduciary act in which the
administrator owes a special duty of loyalty to the plan beneficiaries;

(2) principles of trust law require courts to review a denial of plan
benefits under a de novo standard unless the plan provides to the
contrary;

(3) where the plan provides to the contrary by granting the
administrator or fiduciary discretionary authority to determine
eligibility for benefits, trust principles make a deferential standard
of review appropriate; and

(4) if a benefit plan gives discretion to an administrator or fiduciary
who is operating under a conflict of interest, that conflict must be
weighed as a factor in determining whether there is an abuse of
discretion.

Glenn, 128 S. Ct. at 2347-2348 (citing, inter alia, Davila, 542 U.S. at 218
and Central States, Southeast & Southwest Areas Pension Fund v. Central
Transport, Inc., 472 U.S. 559, 570, 105 S. Ct. 2833, 86 L. Ed. 2d 447 (1985));
Firestone, 489 U.S. at 111-113, 115; Serbanic v. Harleysville Life Insurance
Co., Nos. 08-1059, 08-1157, 2009 U.S. App. LEXIS 9302, *5, 325 Fed. Appx. 86,
89 (3d Cir. April 30, 2009).

plan language is reasonable and thus the decision to deny the benefit must be upheld.  To properly resolve these competing motions, we must carefully examine the pertinent contractual language.[4]

In so doing we note at the outset that, as delineated on its cover page, the Plan provides for: (1) Employee Term Life Coverage (Basic and Optional Plans) and (2) Dependents Term Life Coverage.  (Prudential MSJ, Exhibit 5, at Bates No. PRU 000001). These various Coverages are described at different parts of the Plan as shown by the Table of Contents: Basic Employee Term Life Coverage is outlined beginning at page 14; Optional Employee Term Life Coverage is described at page 16; and the Optional Dependents Term Life Coverage Section commences on page 22. (Prudential MSJ, Exhibit 5, Bates No. PRU 00007).  Basic Employee Term Life Coverage is provided to all employees in the amount of 100% of annual earnings up to a maximum amount of $1,000,000. (Prudential MSJ, Exhibit 5, at Bates No. PRU 000008).  Optional

---

[4]  It is self-evident from the terms of the Summary Plan Description that the plan at issue here is the Tyco International Management Company LLC Life Insurance Plan, the Plan Sponsor and Plan Administrator is Tyco International Management Company, LLC, and the Plan Benefits are provided by the Prudential Insurance Company of America, which is also the Claims Administrator.  (Motion for Summary Judgment of Defendant Prudential Insurance Company of America ("Prudential"), Exhibit 6).  The Summary Plan Description further stipulates as follows in pertinent part:

... The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious. ...

(Prudential MSJ, Exhibit 6 at Bates Nos. PRU 000043, PRU 000044.)

Employee Term Life Coverage offers Tyco employees some ten different options, Option 1 beginning with 100% of annual earnings and ending with Option 10, which provides for 1000% of annual earnings up to a maximum amount of $4.5 million in coverage.  (Exhibit 5, at Bates No. PRU 000009).  Optional Dependents Term Life Coverage is available for employee election to cover "Qualified Dependents" which include a spouse or domestic partner in any multiple of $10,000 up to a maximum amount of $250,000 or children under either Option 1 in the amount of $5,000 or Option 2 in the amount of $10,000. (Prudential MSJ, Exhibit 5, Bates No. PRU 000011).

Although similar in some respects, the Plan descriptions for each type of insurance are in no way identical.  For example, unlike the Basic Employee Term Life Coverage, Optional Employee Term Life Coverage and Optional Dependents Term Life Coverage both have a "Non-medical Limit on Amount of Insurance."  Under the section of the plan outlining Optional Employee Term Life Coverage, this Non-medical Limit is described as follows:

> **Non-medical Limit on Amount of Insurance**: There is a limit on the amount for which you may be insured without submitting evidence of insurability.  This is called the Non-medical limit.
>
> If the amount of insurance for your Class and age at any time is more than the Non-medical Limit, you must give evidence of insurability satisfactory to Prudential before the part over the Limit can become effective.
>
> This requirement applies: when you first become insured; when your Class changes; if you request an increase in your

11

Amount of insurance; or if the amount for your Class is changed by an amendment to the Group Contract.  Even if you are insured for an amount over the Limit, you will still have to meet this evidence requirement before any increase in your amount of insurance can become effective.  The amount of your insurance will be increased to the amount for your Class and age when Prudential decides the evidence is satisfactory *and you meet the Active Work Requirement.* ... <u>Id</u>.(emphasis supplied).

(Prudential MSJ, Exhibit 5, Bates. No. PRU 000009).

Under the plan provisions for Optional Dependents Term Life Coverage, the Non-medical Limit is set forth thusly:

**Non-medical Limit on Amount of Insurance for Your Spouse or Domestic Partner**: There is a limit on the amount for which your Spouse or Domestic Partner may be insured without submitting evidence of insurability.  This is called the Non-medical Limit.

If you elect an amount of Dependents Term Life Coverage for your Spouse or Domestic Partner above the Non-medical Limit, you must give evidence of insurability for your Spouse or Domestic Partner satisfactory to Prudential before the part over the Limit can become effective.  The amount of your Spouse's or Domestic Partner's insurance will be increased when Prudential decides the evidence is satisfactory and your Spouse or Domestic Partner is not home or hospital confined for medical care or treatment.  This requirement applies: when your Spouse or Domestic Partner first becomes insured, or if you elect to have your Spouse's or Domestic Partner's amount of Dependents Term Life Coverage increased.

Non-medical Limit: $30,000.

(Prudential MSJ, Exhibit 5, Bates No. PRU 00011).  Thus the definition of the non-medical limit on amount of insurance for a spouse or domestic partner differs from that for an employee in that there is no mention of the active work requirement for dependents optional term life coverage.

The Active Work Requirement is defined in the Definitions Section of the Plan[5] as: "A requirement that you be actively at work on a full time basis at the Employer's place of business or at any other place that the Employer's business requires you to go. You are considered actively at work during a normal vacation if you were actively at work on your last regularly scheduled workday." (Prudential MSJ, Exhibit 5, Bates No. PRU 000035). The Optional Employee Term Life Coverage section further applies the Active Work Requirement to elections for increases in coverage:

> **Increases and Decreases:** You may elect to have your amount of insurance under the Coverage changed. You must do this on a form approved by Prudential and agree to make any required contributions.
>
> If you request an increase, for reasons other than a Life Event, you must give evidence of insurability. The amount of your insurance will be increased when Prudential decides the evidence is satisfactory *and you meet the Active Work Requirement. ...*
>
> **Changing Plans Due to a Life Event:** You may elect to have your amount of insurance under the Coverage changed within 31 days of a Life Event. You must do this on a form approved by Prudential and agree to make any required contributions.
>
> If you request an increase of more than one option, or if you previously waived Supplemental coverage, you must give evidence of insurability. The amount of your insurance will be increased when Prudential decides the evidence is satisfactory *and you meet the Active Work Requirement. ...*

---

[5]   Both Dependents Insurance and Employee Insurance are also specifically defined in the Definitions portion of the plan document. Dependents Insurance is: "Insurance on the person of a dependent," whereas Employee Insurance is: "Insurance on the person of an Employee." (Exhibit 5, Bates No. PRU 000035).

(Prudential MSJ, Exhibit 5, Bates No. PRU 000010). (emphasis supplied).  Thus, while it is clear that for Optional Employee Term Life Coverage to become effective, the employee must be actively at work pursuant to the definition of the "Active Work Requirement," there is no such mention of an Active Work Requirement for either the Basic Employee Term Life Coverage or the Optional Dependents Term Life Coverage.  (Exhibit 5, Bates Nos. PRU 000008, PRU 000011-PRU 000012).

        In addition, the Plan includes a section entitled "When You Become Insured" which again makes a clear distinction "For Employee Insurance" and "For Dependents Insurance."  (Prudential MSJ, Exhibit 5, Bates Nos. PRU 000015, PRU 000016).  Under this section of the plan,

**FOR EMPLOYEE INSURANCE**

Your Employee Insurance under a Coverage will begin the first day on which:

* You have enrolled, if the Coverage is Contributory; and

* You are eligible for Employee Insurance; and

* You are in a Covered Class for that insurance; and

* You have met any evidence requirement for Employee Insurance; and

* Your insurance is not being delayed under the Delay of Effective Date section below; and

* That Coverage is part of the Group Contract.

For Contributory Insurance, you must enroll on a form approved by Prudential and agree to pay the required contributions.  Your Employer will tell you whether

14

contributions are required and the amount of any
contribution when you enroll.

At any time, the benefits for which you are insured are
those for your class, unless otherwise stated.

      ...

**FOR DEPENDENTS INSURANCE**

Your Dependents Insurance under a Coverage for a person will
begin the first day on which all of these conditions are
met:

* You have enrolled for the person for Dependents Insurance
under the Coverage, if the Coverage is Contributory.

* the person is your Qualified Dependent.

* You are in a Covered Class for that insurance.

* To be insured for a Qualified Dependent under the Optional
Dependents Term Life Coverage, you must be insured under the
Basic Employee Term Life Coverage of the Group Contract.

* Any evidence requirement for that Qualified Dependent has
been met.

* Your insurance for that Qualified Dependent is not being
delayed under the Delay of Effective Date section below.

* Dependents insurance under that Coverage is part of the
Group Contract.

For Contributory Insurance, you must enroll your Qualified
Dependent on a form approved by Prudential and agree to pay
the required contributions.  Your Employer will tell you
whether contributions are required and the amount of any
contribution when you enroll your Qualified Dependent.

At any time, the Dependents Insurance benefits for which are
insured are those for your class, unless otherwise stated.

On the following page appears the "Delay of Effective Date"

portion of the plan referenced in the section cited above.  It

too, makes a clear distinction between "For Employee Insurance"

15

and For "Dependents Term Life Coverage":

**FOR EMPLOYEE INSURANCE**

Your Employee Insurance under a Coverage will be delayed if
you do not meet the Active Work Requirement on the day your
insurance would otherwise begin.  Instead, it will begin on
the first day you meet the Active Work Requirement and the
other requirements for the insurance.  The same delay rule
will apply to any increase in your insurance that is subject
to this section.  If you do not meet the Active Work
Requirement on the day that an increase would take effect,
it will take effect on the day you meet that requirement.

**FOR DEPENDENTS TERM LIFE COVERAGE**

A Qualified Dependent may be confined for medical care or
treatment, at home or elsewhere.  If a Qualified Dependent
is so confined on the day that your Dependents Insurance
under a Coverage for that Qualified Dependent, or any
increase in that insurance that is subject to this section,
would take effect, it will not then take effect.  The
insurance or increase will take effect upon the Qualified
Dependent's final medical release from all such confinement.
The other requirements for the insurance or increase must
also be met.

Newborn Child Exception: This section does not apply to a
child of yours if the child is born to you and either:

(1) is your first Qualified Dependent; or

(2) becomes a Qualified Dependent while you are insured for
Dependents Insurance under that Coverage for any other
Qualified Dependent.

Also, this section does not apply to any age increase in the
amount of insurance for a child under the Dependents Term
Life Coverage.

(Exhibit 5, Bates No. PRU 000017).

In this manner, the plan obviously distinguishes between the

three different types of insurance provided thereunder and clear

differences exist between what delays the effective date of

16

coverage for employee insurance (active work requirement) and what delays the effective date of coverage for dependents insurance (confinement for medical care or treatment). Further, having now carefully read the plan document, we cannot find any reference whatsoever to either short-term or long-term disability or any language that may be read to suggest that either form of disability has any impact upon the effective date of any form of life insurance coverage offered under the plan. From this, we conclude that Plaintiff is correct that the term "Active at Work" is not defined to include an absence from work specifically based upon a disability and that the "Active Work Requirement" does not apply in any manner to Dependents Term Life Coverage.

In their summary judgment briefing, Defendants point to that portion of the plan entitled "Who is Eligible to Become Insured" found on page 9 as support for the decision to deny Plaintiff the benefit claimed. That section states in relevant part that:

**FOR DEPENDENTS INSURANCE**

**You are eligible to become insured for Dependents insurance while:**

\*     You are eligible for Employee Insurance; and

\*     You have a Qualified Dependent.

In the immediately preceding paragraphs, the plan states that:

**FOR EMPLOYEE INSURANCE**

17

**You are eligible to become insured for Employee Insurance while:**

* You are a full-time Employee of the Employer; and

* You are in a Covered Class; and

* You have completed the Employment Waiting period, if any.  You may need to work for the Employer for a continuous full-time period before you become eligible for the Coverage.  The period must be agreed upon by the Employer and Prudential.  Your Employer will inform you of any such Employment Waiting Period for your class.

**You are full time** if you are regularly working for the Employer at least the number of hours in the Employer's normal full-time work week for your class, but not less than 20 hours per week.  If you are a partner or proprietor of the Employer, that work must be in the conduct of the Employer's business.

     ...

The rules for obtaining Employee Insurance are in the When You Become Insured section.

(Prudential MSJ, Exhibit 5, Bates No. PRU 000013).  Defendants' read this language to mean that inasmuch as employee insurance coverage begins the first day on which the six requirements for commencement of employee insurance are satisfied[6] and because eligibility for employee insurance is a pre-requisite to eligibility for dependents coverage, the active work requirement applies with equal force to the effective date of dependents insurance.  Thus, Defendants submit, Plaintiff's ambiguity

---

[6]  Included among these six requirements is that insurance is not being delayed under the Delay of Effective Date section under which the active work requirement is delineated. (Prudential MSJ, Exhibit 5, at Bates No. PRU 000015).

arguments fail and, since Plaintiff admits that he was not
actively at work on the date on which his wife's policy was to
become effective, the decision to deny coverage was appropriate.

Although we too fail to see any ambiguity in the plan
language, we do not read the foregoing plan language as
Defendants suggest nor can we find that Defendants'
interpretation was either correct or reasonable.  For one as
noted previously, in reading the plan as a whole, it is plain
that clear differences exist in the types of insurance provided,
in the coverages available under each type and in the threshold
requirements that must be met for eligibility and for
effectiveness.  While there is no question but that Employee
Insurance "will be delayed" "if [the employee] do[es] not meet
the Active Work Requirement on the day the insurance would
otherwise begin," it is equally clear that in the case of
Dependents Term Life Coverage, the effective date is delayed:

> "[i]f a Qualified Dependent is so confined [for medical care
> or treatment at home or elsewhere] on the day that ...
> Dependents Insurance under a Coverage for that Qualified
> Dependent, or any increase in that insurance that is subject
> to this section would take effect, it will not then take
> effect" [until] "the Qualified Dependent's final medical
> release from all such confinement" and '[t]he other
> requirements for the insurance or increase" are also met.
> (Exhibit 5, PRU 000017).

Again, we find this language to be crystal clear: the effective
date for Dependents Term Life Coverage is delayed for medical

confinement of the dependent – not for the failure of the employee to be actively at work on the day coverage would otherwise commence.

In this fashion, we thus find Defendants' interpretation of the plan to clearly be erroneous.  Indeed it appears that in denying the plaintiff's claim, Defendants read the plan's requirements for "eligibility" for coverage to equate to the rules for "obtaining" coverage and governing the date on which the insurance becomes "effective."  The terms are not interchangeable.  To be "eligible" means to be: "1. Qualified, as for an office or position," or "2. Desirable and worthy of choice."  WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 425(3d ed. 1994).  To "obtain" is "to gain possession of, esp. by intention or endeavor: ACQUIRE."  Id, at 812.  "Effective" means: "1. Having an expected or intended effect. 2. Producing or designed to produce a desired effect. 3. In effect: OPERATIVE. ... 4. Existing in fact: ACTUAL. ..." Id, at 418.  Again, in reading the plan as a whole, it becomes obvious that while an employee may have met the requirements for and been eligible for coverage and eligible to elect certain coverage, that employee has not necessarily obtained coverage nor is that coverage necessarily in effect.

In this case, neither Prudential nor Tyco dispute that Plaintiff was eligible to become insured for Dependents Insurance

when he made the election in October, 2012 nor can they refute
the evidence that a deduction was made for Plaintiff's portion of
the premium from his January 8, 2013 paycheck.  (See, Exhibit "4"
to Plaintiff's Response to Prudential's Motion for Summary
Judgment).  The only issue presented here then is whether the
plan language concerning the Delay of Effective Date for
Dependents Insurance may be reasonably read to require that the
Employee meet the Active Work Requirement on the day the
Dependents Insurance would begin.  Given that the plan language
governing Dependents Insurance clearly does **not** state this, we
find Defendants' tortured reading to be arbitrary, capricious and
a clear abuse of Prudential's (as claims administrator)
discretion.  As a result, it is the conclusion of this Court
that Plaintiff is entitled to judgment in his favor as a matter
of law and that Defendants' motions for summary judgment are
properly denied.

An order follows.

21